FERMIN SOLIS ANIEL and    -IN PRO SE-
ERLINDA ABIBAS ANIEL
75 Tobin Clark Drive
Hillsborough, CA 94010
Telephone: (650) 284-6417
Facsimile: (650) 571-5829
Email: bootsaniel1952@yahoo.com

Fermin and Erlinda Aniel: *Debtors Representing Themselves*

FILED
MAR 11 2010
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA-SAN FRANCISCO DIVISION

E-filing

FERMIN SOLIS ANIEL, an individual, and
ERLINDA ABIBAS ANIEL, an individual;
           *Plaintiffs*,

v.

AURORA LOAN SERVICES, LLC, a
California Limited Liability Company, its
assignee and/or successors; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC., a Corporate Entity; QUALITY LOAN
SERVICES CORP., a California Corporate
Entity; McCARTHY AND HOLTHUS, LLP, a
California Limited Liability Partnership and
DOES 1-50 inclusive Defendants

Case No. CV 10 1042 EMC

COMPLAINT FOR:
(1) VIOLATION OF FAIR DEBT AND COLLECTION PRACTICES ACT (FDCPA)
(2) VIOLATION OF CALIFORNIA ROSENTHAL ACT
(3) FRAUD
(4) WRONGFUL FORECLOSURE
(5) REQUEST IMMEDIATE INJUNCTIVE RELIEF (TRO)
(6) DECLARATORY RELIEF
(7) QUIET TITLE

DEMAND FOR JURY TRIAL

COMES now Plaintiffs FERMIN SOLIS ANIEL and ERLINDA ABIBAS ANIEL ("Plaintiffs") as individuals, who complain and allege as follows:

1

## PRELIMINARY STATEMENT

1. This action is brought by homeowners against a "pretender lender" who lacks the standing to enforce Promissory Note and the Deed of Trust, which secures the Note, to foreclose on the Plaintiffs' rental property.

2. This action is also based upon predatory lending practices; namely the fraudulent transfers and documents, which prevented any chance for the Plaintiffs to modify their loan and risk losing their home to a non-judicial foreclosure.

3. This action is also based on the fraudulent misrepresentation by these "Pretender Lenders."

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction in this proceeding under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d) for Fair Debt and Collection Practices Act (FDCPA) claims, and under 28 U.S.C. § 1327 for supplemental jurisdiction of the state law claims. All state law claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. These claims all arise out of the same controversy and sequence of events.

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the claim occurred in this judicial district.

6. Defendants, and each of them regularly engage in business of debt collection and/or servicing mortgage loans in the State of California. Therefore, the Court has personal jurisdiction over each party.

## PARTIES

7. Plaintiffs are, and at all times mentioned herein were, individuals owning the subject Property located in the State of California, County of San Mateo. Plaintiffs own the real property that is the subject of this Complaint, the location of which is commonly known as 833 Clearfield Drive, Millbrae, California 94030 (herein the "Property"). Plaintiff executed a Promissory Note (herein "Note") secured by a Deed of Trust (herein "Deed") for a loan on the Property.

8. Plaintiffs are informed, believe, and allege that at all relevant times mentioned in this Complaint, Defendant AURORA LOAN SERVICES, LLC (herein "Aurora") was conducting business in the County of San Mateo, State of California, and is engaged in debt collection. Plaintiff believes that Aurora Loan Services, LLC is a debt collection company whose address is at 10350 Park Meadow Drive 5th floor, Littleton, Co 80124. Plaintiff believes that Aurora is subsidiary to the bankrupt Lehman Brothers.

9. Plaintiffs are informed, believes and, thereon alleges, Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, (herein as "MERS") is currently a corporation in the State of California, which became active in 2009, and at all relevant times herein mentioned was conducting business in the County of San Mateo, State of California and holds itself out to be the Nominee and Beneficiary under the Deed. Plaintiffs allege that MERS has no beneficial interest in the Note and is merely a straw man with no interest in the Deed.

10. Plaintiffs are informed and believe and thereon allege, Defendant, QUALITY LOAN SERVICES CORP. (herein "Quality") is a corporate entity doing business in California and is a collection agency in the business of foreclosing real property. Quality sent Plaintiffs the Notice of Trustee Sale to auction the property to the highest bidder on the Trustee sale on March 18, 2010 at 1pm. Plaintiffs are informed that Kevin McCarthy is listed as its President and Agent of Service.

11. Plaintiffs are informed and believe and thereon allege, Defendant McCARTHY AND HOLTHUS, LLP, (herein "McCarthy & Holthus") is a California Limited Liability Partnership and in the practice of Law and debt collection. McCarthy & Holthus is the firm that litigated the case with respect to the property in the Bankruptcy Court, claiming to represent Aurora. Plaintiffs are informed that the Partner, Kevin McCarthy, is the same McCarthy, who is the President and Service of Agent for Quality.

12. Plaintiffs are unaware of the true names and capacities of the Defendants sued herein under the fictitious names Does 1 through 50, inclusive, and Plaintiffs will amend this Complaint to allege such names and capacities as soon as they are known. Plaintiffs are informed, believe, and allege that each of said fictitiously named Defendants are responsible in some manner for the wrongful acts complained of herein.

3

11. Plaintiffs are informed, believe, and allege that Defendants, and each of them, at all relevant times herein were and still are agents for one another, and acting under the course and scope thereof, with knowledge and consent of each other.

## FACTUAL ALLEGATIONS

### History of the Loan

12. Plaintiffs executed a Deed of Trust on November 2, 2005. The Deed states Bayporte Enterprise, Inc. DBA Bayporte Financial, a California Corporation as the Lender and Trustee, and MERS, acting solely as a nominee for Lender and Lender's successors and assigns, as the beneficiary under the Security Instrument. (See Exhibit "A").

13. Plaintiffs also executed a Note on November 2, 2005. The Note states Bayporte Enterprise, Inc. DBA Bayporte Financial, a California Corporation (herein "Bayporte") as the Lender. (See Exhibit "B").

14. The servicer at the time the loan was created, Homecomings Financial, LLC, transferred its servicing rights to Aurora on April 1, 2008. Aurora claims to be the current loan servicer on the loan with rights to collect payments. (See Exhibit "C").

15. Debtors defaulted on their loan on August 2008, due to debtors lost and sudden drop of income in the spring of 2008.

16. Plaintiffs sought a loan modification from Aurora on December 3, 2008, through plaintiffs' attorney, Sydney Jay Hall.

17. On October 15, 2008, plaintiffs filed a complaint with Office of Thrift Supervision under the Department of Treasury. ("herein "OTS"). On December 23, 2008, OTS responded that Aurora was willing to assist plaintiffs with a possible loan workout option, which includes a loan modification. Mr. Francisco Nieves, on behalf of Aurora, was assigned to handle plaintiffs' account. Plaintiff repeatedly called Mr. Nieves about a workout plan. However, plaintiffs were only able to contact Mr. Nieves on one occasion. Finally, Mr. Nieves or anyone representative from Aurora stopped contacting the plaintiffs. Plaintiffs' effort to seek a loan modification through the help of the office of Thrift Supervision failed due to unwillingness from Aurora Loan Services to help. (See Exhibit "D").

18. On November 18, 2008, MERS filed an unrecorded Substitution of Trustee, which was signed by Mary Jane Sarne as the Vice President of MERS, substituting Quality as a new trustee, under the Deed of Trust. A certain Michelle Nguyen notarized the document. (See Exhibit "E").

19. On November 18, 2008, Quality recorded a Notice of Default and Election to Sale under Deed of Trust, as an agent for beneficiary of Bayporte Enterprises, Inc. DBA Bayporte Financial, a California Corporation. (See Exhibit "F").

20. On or around November 28, 2008, a certain Rhonda Gall, of Aurora Loan Services of ScottsBluff, NE, prepared a Corporate Assignment of Deed of Trust for MERS that grants, assigns, and transfers to Aurora all beneficial interest under that certain Deed of Trust dated 11/02/05 in the amount of $1,000,000.00 for value received. This document was signed by JoAnn Rein as Vice President of MERS with a Corporate Seal, and the document was notarized by a Notary Public in the State of Nebraska by Darline Deitz. The document was certified under Penalty of Perjury under the laws of the State of Nebraska by Darline Deitz as a notary public. (See Exhibit "G").

21. On December 31, 2008, Plaintiffs received a letter from Aurora Loan Services denying the loan modification due to being "financially unable to afford monthly payment because of the payment increases." (See Exhibit "H").

22. On January 25, 2009, Plaintiffs wrote a letter to the Aurora alleging their unwillingness to cooperate with the Plaintiffs. Plaintiffs pointed out various violations in regards to their loan documents under Truth In Lending Act (TILA) and certain RESPA violations. (See Exhibit "I").

23. On February 2, 2009, plaintiffs attached a qualified written request (QWR) to their January 25, 2009, letter to Aurora and Quality. (See Exhibit "J").

24. On February 3, 2009, Aurora responded and failed to resolve plaintiff inquiry about the violations, but instead Aurora insisted that plaintiffs should contact Bayporte Enterprises, Inc. DBA Bayporte Financial A California Corporation and Chicago Title Company in regards to Plaintiffs' concerns. Aurora Loan Services admitted in their letter dated

February 3, 2009, that Aurora acquired the loan servicing on April 1, 2008 from Homecomings Financial, LLC. (See Exhibit "K").

25. On February 6, 2009, plaintiffs sent another qualified written request (QWR) to Aurora Loan Services under RESPA Act. (See Exhibit "L").

**Bankruptcy History**

26. Plaintiffs filed a voluntary Bankruptcy petition on February 25, 2009, under chapter 11. Plaintiffs' Bankruptcy case number is DM: 09-30452.

27. Plaintiffs hired lawyer, Sydney Jay Hall, to represent them when they filed their petition. However, because of Attorney's Hall lack of experience in Chapter 11 case, he withdrew as counsel for plaintiffs in June of 2009.

28. On March 11, 2009, Quality filed a Notice Of Trustee Sale violating 11 USC §362 of the bankruptcy code, "the automatic stay", while plaintiffs were still under the Chapter 11 bankruptcy protection. (See Exhibit "M").

29. On or around April 20, 2009, Aurora executed a Corporate Assignment of Deed of Trust, which MERS, as nominee for Bayporte Enterprises, Inc DBA Bayporte Financial, a California Corporation, assigned the Deed to Aurora. The document was executed by a certain JoAnn Rein, as vice president of MERS and notarized by Kathy A.Nemitz, a Notary Public in the State of Nebraska. The Corporate Assignment of Deed was prepared by certain Susan Lindhorst of Aurora Loan Services at ScottsBluff, NE. This document was recorded in San Mateo County Recorder's office on April 27, 2009. Plaintiffs are informed, believe, and allege that JoAnn Rein is an employee of Aurora and notarizes similar assignments as a Nebraska Notary Public. (See Exhibit "N").

30. On or about May 8, 2009, Kristin A Schuler-Hintz, an attorney for McCarthy & Holthus acting as an agent of Aurora, signed a Bankruptcy Proof of Claim, under 11 USC §501, which states that "Aurora Loan Services, LLC" is the secured creditor to whom the debtors owes money or property with the power to vote on any reorganization plan . The Proof of Claim also states that the amount of the secured debt was $1,158,041.89. The Proof of Claims states that the amount of arrearage is $68,452.86 and the basis of perfection is Deed Of Trust and the total of secured claim is $1,158,041.89. (See Exhibit "O").

31. On or about December 15, 2009, Aurora, claiming to be the secured creditor, filed a motion for relief from the Automatic Stay, under 11 U.S.C. 362(d). (See Exhibit "P"). McCarthy & Holthus claimed to represent Aurora as their attorney. In that motion, Aurora failed to include any documentation that they owned the Note or the Deed except for a declaration by Kimberly Dotson on November 20, 2009, where she claims Aurora owns the loan. (See Exhibit "Q").

32. On or about December 22, 2009, Plaintiffs filed a response to Aurora's motion for relief from stay. In that response, Plaintiffs claimed that Aurora is not the true owner of the note and deed because they lacked evidence to prove ownership. Therefore, Aurora was not the real party in interest to claim relief from the automatic stay in Bankruptcy court. (See Exhibit "R").

33. On or about December 29, 2009, Aurora submitted a response, where they provided evidence of one of the Corporate Assignments of Deed of Trust (see above paragraph 29) and the promissory note with an attached allonge. The allonge alleges to show that the Note was indorsed from Bayporte to Residential Funding Corporation, as executed by Bayporte Vice President, Richard I. Plume. The next indorsement was by Residential Funding Corporation to Deutsche Bank Trust Company Americas as Trustee, executed by Judy Faber, Vice President. Finally, a separate allonge states that the note has been indorsed from Deutsche Bank Trust Company Americas as Trustee FKA Bankers Trust Company, as Trustee by Residential Funding Company, LLC FKA Residential Funding Corporation, it's Attorney in Fact, to Aurora, by an illegible signature, claiming to be a Limited Signing Officer. (See Exhibit "S").

34. On January 07, 2010, Plaintiffs argued the motion as Pro Se in the Bankruptcy Court. The court assumed the evidence provided by Aurora was legitimate. Plaintiffs believed that the court was prejudiced and bias against them as Pro Se litigants. At the hearing, the attorney for Aurora stated in court that Aurora is both the servicer and owner of the loan.

35. On January 14, 2010, the Bankruptcy court issued an order that on or before January 15, 2010, Plaintiffs must tender $11,526.12 to Aurora. Plaintiffs were also required to make monthly payments to Aurora in amount of $5,763.06. Plaintiffs were required to make these payments in order to provide adequate protection to Aurora and continue the Stay. If the

Plaintiffs defaulted on the payments, Aurora would be granted full relief from the Automatic Stay.

36. Plaintiffs refused to make the adequate protection payments because Aurora is not the true owner of the note.

37. On or around January 25, 2010, plaintiff filed a second complaint to Office of Thrift Supervision regarding the conduct of Aurora Loan Services in foreclosing the said property. Plaintiffs requested to clarify Aurora Loan Services' role in plaintiffs' mortgage account; specifically, whether Aurora is a loan servicer or the secured creditor. Plaintiffs also requested information on McCarthy & Holthus, who claims to represent Aurora in their motion to relief from stay and the proof of claim during a hearing held on January 7, 2010, at the bankruptcy court. Plaintiffs asserted in court that Aurora is only servicing the plaintiff mortgage based on the letter Aurora sent to the Plaintiffs.

38. On or around February 04, 2010, Aurora submitted a declaration of default to the bankruptcy court.

### Second Qualified Written Request

39. On December 26, 2009, Plaintiffs sent a second QWR, as authorized by the RESPA act, to Aurora. (See Exhibit "T").

40. Aurora sent a letter, dated December 30, acknowledging the request. (See Exhibit "U").

41. Aurora, through their counsel, Kahrl Wutscher LLP, sent a full response to Plaintiffs' QWR, dated February 15, 2010. (See Exhibit "V") In that response, Aurora claimed that the owner of the debt was RALI 2005-Q05. The response also states that Aurora is "only the servicer of the subject loan". The response also included various documentations in relation to the loan and in particular:

1. A December 01, 2009, letter from Aurora to GMAC Mortgage Corporation, requesting the allonge to be executed and notarized. (See Exhibit "W")

2. A December 01, 2009, servicer officer's certificate, requesting that the trustee execute note allonge to Aurora. This letter confirms that the loan is a securitized

loan and under the rules and guidelines of the Pooling Servicing Agreement ("PSA"). (See Exhibit "X")

42. In a separate response to the Plaintiffs' OTS complaint, dated February 25, 2010, Aurora, apparently acting on its own behalf and without counsel, stated that the investor of the mortgage was "Deutsche Bank, who is a pool investor" and Aurora is servicing the loan on their behalf. The response never makes mention of McCarthy & Holthus as their counsel. However, in the letter, Aurora directs the Plaintiffs to contact the foreclosure counsel representing Aurora, Quality, providing a telephone number. When Plaintiffs attempted to contact Quality, using the telephone number provided, they were directed to McCarthy & Holthus and not Quality. (See Exhibit "Y").

43. On or around the first week of March, 2010, Plaintiffs received a Notice of Trustee's Sale and an auction is scheduled for March 18, 2010 at 1:00pm at 400 Count Center, Redwood City, California. (See Exhibit "Z").

## FIRST CAUSE OF ACTION

## VIOLATION OF FAIR DEBT AND COLLECTION PRACTICES ACT (FDCPA)

### (As against Defendants Aurora, McCarthy & Holthus, and Quality)

44. Plaintiffs incorporate by reference paragraphs 1-43 each and every allegation set forth above and herein.

45. To establish a violation of the FDCPA:

(1) the plaintiff is any natural person who is harmed by violations of the FDCPA, or is a "consumer" (15 U.S.C.A. § 1692a(3)) when the cause of action is for a violation of 15 U.S.C.A. § 1692c (communication in connection with debt collection) or 15 U.S.C.A. § 1692e(11) (requiring the debt collector provide the consumer with the "mini-Miranda" warning) [§ 9];

(2) the "debt" arises out of a transaction entered primarily for personal, family, or household purposes; 15 U.S.C.A. § 1692a(5) [§ 9];

(3) the defendant collecting the debt is a "debt collector" within the meaning of 15 U.S.C.A. § 1692a(6).

(4) the defendant has violated, by act or omission, a provision of the FDCPA, 15 U.S.C.A. § 1692a-1692o. 15 U.S.C.A. § 1692k.

46. Plaintiffs are a "Consumer" as defined in 15 USC § 1692a(3).

47. Plaintiffs are informed and believe that Defendants are "Debt Collectors" either directly or through agents as defined by 15 USC § 1692a(6)(b).

48. Plaintiffs incurred a financial obligation in real property that was primarily for personal, family or household purpose and is a "debt" as that term is defined by 15 USC § 1692a(5).

49. Plaintiffs allege that Defendants violated the FDCPA in the following particulars:

    a. The use of false or misleading representations or deceptive means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692e; including stating THREE different owners of the loan throughout various legal document, letters, and QWR responses; Aurora claiming to be the loan servicer and owner of the loan in the Bankruptcy court; Aurora claiming only to be the loan servicer yet claiming to the be secured creditor on the Proof of Claim;

    b. The unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f; including posting a Notice of Trustee Sale in violation of the Bankruptcy Automatic Stay, 11 USC §362; claiming THREE different owners of the loan; directing the Plaintiffs to contact Quality but instead directed to McCarthy & Holthus.

50. Plaintiffs are entitled to statutory damages, a declaration that Defendants violated the FDCPA.

## SECOND CAUSE OF ACTION
## VIOLATION OF CALIFORNIA ROSENTHAL ACT
### (As Against Aurora, McCarthy & Holthus, and Quality)

51. Plaintiffs incorporate by reference paragraphs 1-50 each and every allegation set forth above and herein.

52. Plaintiffs allege that Defendants are debt collectors under the definition of the California Rosenthal Act in that they regularly, in the course of their business, on behalf of themselves or others, engage in the collection of debt.

53. Defendants violated the Act when in attempting to collect the debt they:

    a. misrepresented to the Bankruptcy Court who the real secured creditor was on the Proof of Claim and their motion for relief from stay;

    b. claiming THREE different owners to the loan;

    c. claiming an interest in the DEED through an assignment of the Deed of Trust;

    d. claiming to be a loan servicer and the owner of the loan when in subsequent documents claim Aurora is acting on behalf on the true owner as a loan servicer;

    e. added unreasonable, fraudulent, and false charges not only to the proof of claim but on the Notice of Trustee Sale;

    f. submitting evidence of an assignment of deed of trust and an indorsement of the note in favor of Aurora, but claim in subsequent documents that Aurora is NOT the holder of the loan; and

    g. attempt to foreclose on the property without any explanation of the true owner of the Note and the Deed.

54. Defendants' actions have caused Plaintiff actual damages, including, but not limited to, severe emotional distress, frustration, anger, anxiety, sleeplessness, sadness and depression.

\\\\\\\\

## THIRD CAUSE OF ACTION
## FRAUD

11

**(As Against All Defendants)**

55. Plaintiffs incorporate by reference paragraphs 1-54 each and every allegation set forth above and herein.

56. Plaintiffs allege that the Defendants made false representations to the Plaintiffs regarding material facts, including but not limited to, the true owner and holder of the NOTE and DEED, additional charges on the debt, true agents of the creditors, fraudulent documentations submitted to the Bankruptcy court, loan modification promises, transfers, and assignments of the deed of trust, etc.

57. Plaintiffs believe and allege that none of the Defendants are the true owner and holder of the promissory note.

58. Plaintiffs allege that MERS misrepresented to the Plaintiffs that they are the nominee and beneficiary under the DEED and/or NOTE. MERS misrepresented to the Plaintiffs that they were the nominee of original lender authorized to assigned the Deed. MERS misrepresented to the Plaintiffs that JoAnn Rein is authorize as Vice President of MERS to assign the Deed. MERS also misrepresented to the Plaintiffs when they assigned the Deed twice; both times to Aurora. MERS is simply a straw man with no beneficial interest in the NOTE or DEED.

59. Plaintiffs allege that Defendant Quality misrepresented to Plaintiffs that Quality was entitled to enforce the security interest as the Trustee and has the right to institute a non-judicial foreclosure proceeding under the Deed of Trust when they filed a Notice of Default and Notice of Sale. Defendant Quality had no powers to auction the property because they are not the original Trustee named on the Plaintiffs' Deed. As a result, Defendant Quality does not have the right to initiate foreclosure proceeding herein under California Civil Code § 2924 et seq.

60. Plaintiffs allege that Defendant Aurora misrepresented to Plaintiffs that they were the true owner of the loan as they claimed in the bankruptcy court through a Proof of Claim statement and motion for relief from the Automatic Stay. Aurora misrepresented to Plaintiffs the true owners of the note by claiming THREE different owners, including themselves, of the loan. Aurora misrepresented to Plaintiffs that they are just a servicing agent

when they claimed beneficial interest in the Deed and the Note. Aurora submitted fraudulent documents which included a corporate assignment of deed and indorsements that state Aurora as the owner of the Note. However, in letters and QWR responses, Aurora claims that they are solely the loan servicer for a different entity claiming ownership of the loan. Aurora never disclosed to the Plaintiffs that GMAC Mortgage Corporation ("GMAC") had an interest in the property.

61. Defendants McCarthy & Holthus misrepresented the Plaintiffs by claiming to represent Aurora as the secured creditors. McCarthy & Holthus misrepresented to the Plaintiffs their true relationship with Quality. Both McCarthy & Holthus share the same phone number and office building. When the Plaintiffs attempt to contact McCarthy & Holthus, they are often directed to Quality employees. This prevents any chance of Plaintiffs effectively reorganize their bankruptcy estate because McCarthy & Holthus are misrepresenting their representations to the bankruptcy court.

62. These material representations made by Defendants were false.

63. The Defendants understood or had knowledge that these material representation to the Plaintiffs were false, or they made the representations with reckless disregard of the truth.

64. Defendants intended to trick Plaintiffs in to believing the validity of their material representations.

## FOURTH CAUSE OF ACTION

## WRONGFUL FORECLOSURE

### (As Against Aurora, MERS, and Quality)

65. Plaintiffs incorporate by reference paragraphs 1-64 each and every allegation set forth above and herein.

66. Under California Commercial Code §3301, "Person entitled to enforce" an instrument are the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 3309 or § 3418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

67. Plaintiffs are informed, believe, and allege that Aurora is not the real party in interest with standing to foreclose the property. Aurora submits an Assignment of the Deed claiming ownership of the Deed. That document is contrary to Aurora's claim that they are only the loan servicers.

68. Plaintiffs are informed, believe, and allege that Aurora fraudulently recorded the assignment of Deed. Aurora executed the same assignment twice with two different notarizations. JoAnn Rein, claiming to be a Vice President of MERS, also notarized a similar Assignment as a notary public of Nebraska. Plaintiffs are informed, believe, and allege JoAnn Rein is an employee of Aurora.

69. Plaintiffs are informed, believe, and allege that the Assignment of Deed is invalid because the assignments took place before the promissory note was indorsed to Aurora, thus, separating the Deed from the Note.

70. Plaintiffs are informed, believe, and allege that Aurora fraudulently indorsed the Note to themselves in order to gain relief from the automatic stay. Under the Uniform Commercial Code 3-202(2), "An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof." Aurora submitted two documents evidencing indorsement, which were not affixed to the Note. A letter dated December 01, 2009, states Aurora's request to GMAC to execute and authorize the indorsement. There is no evidence that GMAC ever approved that indorsement. In the event that the indorsement is valid, the indorsement is contrary to the Aurora's subsequent statements that are only the loan servicer acting on behalf of a different owner of the loan.

71. Plaintiffs allege and believe that Defendants Aurora, Quality, and MERS do not have possession or any beneficial interest in the Note, and are not entitled to any payments. Therefore, they are not "persons entitled to enforce" the Note as outlined in §3301. In the Notice of Trustee Sale, Defendant Quality claims that it was the duly appointed Trustee pursuant to the Deed of Trust but fails to identify the holder of the beneficial interest. The power of Trustee sale was a byproduct of fraudulent documents and transfers of interest.

72. These malicious, willful, and fraudulent acts prevented any chance that the Plaintiffs could save their property from foreclosure. As such, Plaintiffs are entitled to punitive

damages, in an amount sufficient to punish the wrongful conduct and to deter such misconduct in the future.

## FIFTH CAUSE OF ACTION

## REQUEST FOR INJUNCTIVE RELIEF

### (As to All Defendants)

73. Plaintiffs incorporate by reference paragraphs 1-72 each and every allegation set forth above and herein.

74. Defendant Quality attempts to gain possession of the property through a non-judicial foreclosure action. The auction is scheduled to take place on March 18, 2010.

75. Plaintiffs seek an immediate Temporary Restraining Order, and Preliminary Injunction. Plaintiff further seeks a Permanent Injunction enjoining the wrongful acts of the defendants. Immediate injunctive relief is warranted because Plaintiffs are victims of an illegal non-judicial foreclosure attempt and illegal sale by the Defendants, who used fraudulent transferred documents to gain ownership of the property. Plaintiffs demand that the foreclosure sale itself be set aside for reasons stated in this complaint.

76. Any attempt to foreclose the property is invalid and legally unenforceable. Plaintiffs should remain as the true owners of the property.

77. Failure to grant an injunctive relief, would cause the Plaintiffs to lose rental income from the property which would be used in Plaintiffs' Chapter 11 Bankruptcy reorganization plan, and prevent Plaintiffs the opportunity to adjudicate the issues raised in this complaint and receive adequate remedies for the wrongs committed by these Defendants.

78. Moreover, if the Plaintiffs lose rental income from the property and the chance to include the property in a Chapter 11 reorganization plan, it would cause the Plaintiffs irreparable harm of public humiliation and loss of reputation in the community. Plaintiffs' tenants would also be harmed by the foreclosure because they will be forced to vacate the premises.

79. An Injunction is necessary is order to determine the true owner of the loan because of evidence that suggests THREE different owners of the loan.

80. Plaintiffs will suffer irreparable injury for which there is no adequate remedy at law should the injunctive relief not be granted. This property is a unique piece of real property. Losing the property because of a wrongdoings by the defendant will cause the Plaintiffs to lose the land forever. On other hand, Aurora, MERS, and Quality will not be harmed because Aurora, MERS, and Quality were never the REAL PARTY IN INTEREST TO BEGIN WITH. The transfer was done fraudulently and in cohort with all the defendants.

## SIXTH CAUSE OF ACTION

## DECLARATORY RELIEF

### (As Against All Defendants)

81. Plaintiffs incorporate by reference paragraphs 1-80 each and every allegation set forth above and herein.

82. Plaintiffs are informed, believe, and allege that the original Note and/or Deed has been bundled and sold in a pool of investors of Mortgage Backed Securities and the true holder of the NOTE is some unknown investor.

83. Plaintiffs are informed, believe, and allege that both assignments of the Deed to Aurora by MERS are invalid, null and void, and legally unenforceable.

84. Under California Civil Code § 2936, the security follows the note. Without the Note, any enforcement under the Deed is invalid.

85. Thus a non-judicial foreclosure and Trustee Sale auction is invalid under law because Aurora, MERS, and Quality do not have any interest in the Note.

86. Plaintiffs demand that the foreclosure sale be set aside and declared void under the law.

\\\\\\\\

## SEVENTH CAUSE OF ACTION

## QUIET TITLE

16

**(As Against all Defendants)**

87. Plaintiffs incorporate by reference paragraphs 1-86 each and every allegation set forth above and herein.

88. Plaintiffs, at all times relevant herein, were the owner and/or entitled to possession of the Property.

89. Plaintiffs are seeking to quiet title against Defendants' claim of right to foreclose and own the property.

90. Defendants are attempting to wrongfully foreclose the property, claiming they had an interest in the property, which is adverse to the Plaintiffs. Defendants' claims are without any merit whatsoever and are a byproduct of fraudulent transfers, misrepresentations, and fraudulent documents in order to foreclose.

91. Title is clouded when the Defendants wrongfully executed a power of sale under a Deed of Trust securing a promissory note, which none of the Defendants ever owned or produced.

92. Plaintiff seeks to quiet title as of the date when this complaint was filed.

**DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES**

WHEREFORE, plaintiffs respectfully pray for this court to enter a judgment in favor of Plaintiffs and against Defendants as follows:

1. Judgment in favor of Plaintiffs and against Defendants in each cause of action stated in the complaint;

2. That the Court issue a Temporary Restraining Order, Permanent Restraining Order, injunction restraining defendants, their agents, attorneys, representative, and all persons acting in concert or participating with them, from conducting a selling or attempting to sell, transfer, convey, the real property located at 833 Clearfield Drive, Millbrae, California, 94030;

3. Declaratory relief;

4. For a declaration by Defendant Aurora explaining the contradictions as to the true holder of the loan in the Proof of Claim, Motion for Relief from Automatic Stay, and two QWR responses;

5. In the event Aurora maintains they are the true owner of the property, evidence of the ORIGINAL Promissory Note and ORIGINAL indorsement of the Note affixed to the ORIGINAL Note;

6. For a declaration that Defendants are not the legal owners of the NOTE and DEED and had no right to foreclose the Plaintiffs' property and thus set aside the foreclosure attempt;

7. Damages in excess of any transfer price should the property be foreclosed non-judicially;

8. Compensatory and Statutory Damages under the FDCPA and the California Rosenthal Act;

9. Punitive damages in an amount sufficient to punish Defendants' wrongful conduct and deter future misconduct;

10. For an order quieting title;

11. For an order voiding both Assignments of the Deed and the Indorsement of the Note;

12. For Sanction against all the attorneys involved in aiding and abetting the Fraud;

13. All cost of the suit incurred herein; and

14. Any relief as the court deems just and proper.

\\\\\\\\\\\\\\\\\\\\\

Respectfully submitted.

Hillsborough, California, for San Francisco, California, March 11, 2010.

Date: 2-11-10

Fermin Solis Aniel, Plaintiff
-Representing Self-

Date: 2-11-10

Erlinda Abibas Aniel, Plaintiff
-Representing Self-